IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JULIA DONAHUE, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | C.A. No.: |
| v. ) | |
| ) | **TRIAL** |
| TRIDENT FURNISHINGS, LLC ) | **DEMANDED** |
| GALEN GARDNER, AND ) | |
| KAYLA HOFFMAN, ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff, Julia Donahue, sues Defendants, Trident Furnishings, LLC, a Delaware Limited Liability Company, Galen Gardner, and Kayla Hoffman, and shows:

### Introduction

1. This is an action by Julia Donahue against her former employers for unpaid overtime pursuant to the Fair Labor Standards Act and unpaid wages pursuant to the Delaware Wage and Payment Act along with Promissory Estoppel and Unjust Enrichment. By the filing of this action, Plaintiff seeks damages and a reasonable attorney's fee.

**Jurisdiction**

2. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. The Court has jurisdiction over the claims pursuant to 29 U.S.C. § 216(b).

3. The claims arose within the State of Delaware, in the District of Delaware, which is where the venue is proper.

**Parties and General Allegations**

4. Plaintiff, Julia Donahue ("Donahue") is, and was at all times relevant hereto, a resident of the State of Delaware.

5. Upon information and belief, Defendant Trident Furnishings, LLC ("Trident") is a corporation and exists under the laws of the State of Delaware with a registered address of The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

6. Defendant Galen Gardner is, an owner and/or operator of Defendant Trident. Gardner acted and acts directly in the interests of Defendant Trident in relation to its employees. Thus, Gardner was and is an employer within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

7. Defendant Kayla Hoffman, Chief Operating Officer (COO) of Defendant Trident. Hoffman acted and acts directly in the interests of Defendant

Trident in relation to its employees. Thus, Hoffman was and is an employer within the meaning of Section 3(d) of the Act, 29 U.S.C. § 203(d).

8. Defendants Trident, Gardner, and Hoffman do business in Sussex County, Delaware, which share common ownership, management, and employees, and which are engaged in the same type of business, i.e., furniture sales. Defendants are an enterprise engaged in an industry affecting commerce and are employers as defined by 29 U.S.C. § 203(d), which have employees subject to the provisions of the FLSA, 29 U.S.C. § 207, in the locations where Donahue was employed.

9. Donahue began her employment with Defendants on or about September 2020.

10. Defendants agreed that Donahue and other similarly situated employees would get paid on the following pay period after the sales were delivered per "industry standard".

11. Throughout her time at Trident, Donahue was expected to perform duties and tasks unrelated to sales.

12. These duties included but were not limited to fielding phone calls, taking messages for those that were absent or busy, or for the administration, checking on order delivery dates and scheduling deliveries, calling warehouses,

taking payments, and handling customer complaints for other co-workers if absent or busy.

13. As well as daily opening & closing duties such as sanitizing counters, stairwell railing & door handles, cleaning bathrooms as well as the break room kitchen, and cleaning inside and outside of the sets of full glass doors.

14. Donahue also vacuumed, dusted furniture displays, and took out and brought in numerous outdoor furniture cushions from the deck.  It was not unusual for Donahue and other sales members to work all day with no sales- thereby not getting paid anything for their work.

15. Donahue was a loyal employee who increased her workload due to the lack of employees.

16. Donahue often covered and worked for employees who were on vacation or were sick.

17. In Late October or early November 2021, Defendants' Coastline Store was closed for approximately two (2) months, with signs posted to call the Bethany Resort Furnishings store for any questions.

18. The closing was also posted on social media and the website.  Donahue and other sales team members were now handling angry customer complaints about

the closing of the store, undelivered orders they knew nothing about, attempting to track orders by calling manufacturing and shipping.

19. This described activity continued for the entirety of the time the Coastline Store was closed.

20. Donahue regularly worked over 40 hours a week without getting paid for all hours worked.

21. Due to the increased workload to cover the Coastline store and help with shortages due to holidays, illnesses, and COVID quarantines, Donahue spent nearly 50% of her time engaged in work unrelated to sales.

22. Donahue frequently worked over 40 hours a week during the busy times of the year.

23. On or around September 1, 2020, Labor Day weekend, during the COVID-19 pandemic, case deliveries had gone from approximately 2-3 months to 4-6 months to 10-14 months.

24. Ms. Donahue only earned income from actual sales.

25. After the sale, all that's left is to schedule the delivery of the items. Many of the reasons for the delay in the deliveries were the fault of management and not COVID delays.

26. These issues included the selling of furniture, which was out of stock, lack of employees to handle deliveries, late arrival of furniture past quote dates, late shipping, and furniture simply stuck in freight.

27. For instance, furniture would often get shipped and sit in Defendant's warehouse for days unnoticed and unpacked.

28. Other issues included furniture arriving, not being entered into the computer inventory, and not letting the sales team know that the furniture had arrived.

29. Also, customers would cancel orders because the order arrived late, they would return or refuse items where they were dissatisfied with poor quality, manufacturers or production errors, or damaged during delivery, none of which were under the control of the salesperson.

30. Defendant Hoffman even canceled incoming freight arrivals for a week because there was no room in the warehouse to put the delivery.

31. On January 2, 2022, a customer whom Donahue worked with complained about her fabric being canceled.

32. The customer ended up canceling her order and unbeknownst to Donahue, she placed another order at a different location, which happened to also be owned by Trident.

33. When Donahue looked in the computer to see who the salesperson was, it listed Kevin Messick, who is Kayla Hoffman's father.

34. The next day, Donahue saw that the salesperson was changed.

35. On January 10, 2022, Donahue spoke with Defendant Hoffman about the situation. Donahue had put in a lot of work with that specific customer and was entitled to a commission. When Hoffman disagreed, Donahue requested a meeting with Galen Gardner.

36. On January 13, 2022, Donahue came in one hour early to meet with Gardner to complain about the unpaid commissions.

37. Donahue also wanted to discuss an exit plan where she could transition out of the company.

38. At that meeting, Gardner terminated Donahue and laughingly told her that the money from her commissions was now his.

39. Gardner informed Donahue that this wasn't the first time he took someone's commissions as the previous sale representative lost $70,000.00 worth of commissions due to leaving the store.

40. In addition to losing all her commissions, Donahue also lost her commissions over the last weekend she worked as they were not entered into the system yet.

41. Donahue was terminated on January 13, 2022, after she complained about unpaid commissions.

42. At the time of her termination, Donahue was owed approximately $23,782.17 in unpaid commissions (if not more).

## COUNT I:
## VIOLATION OF THE WAGE PAYMENT AND COLLECTION ACT AGAINST DEFENDANT TRIDENT

43. Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

44. At the time of her termination, Donahue was owed approximately $23,782.17 in unpaid commissions (if not more).

45. Pursuant to the Delaware Wage Payment and Collection Act, "Wages" means compensation for labor or services rendered by an employee, whether the amount is fixed on a time, task, piece, commission, or another basis of calculation." 19 *Del. Code* 1101(A)(3)&(4)

46. As a direct and proximate result of Defendant's violation of the Wage Payment and Collection Act, Donahue has suffered lost wages and has sustained damages.

## COUNT II
## ILLEGAL DEDUCTIONS UNDER 19 DEL. C §1107 AGAINST DEFENDANTS

47. Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

58. Defendants, as employers, illegally deducted $930.90 in wages from Plaintiff's paycheck on January 21, 2022, in violation of 19 Del. C. 1107 et seq.

59. Defendants are liable to Plaintiffs for liquidated damages in the amount of 10 percent of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the day upon which payment is required or in an amount equal to the unpaid wages.

## COUNT III:
## VIOLATION OF THE FLSA
## (DRAW SYSTEM VIOLATES §206(a) AND §§207(a) AND (i))

60. Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

61. Defendants' policy or practice of implementing and enforcing a "draw" system as to Plaintiffs whereby the "draws," initially paid to cover payment of minimum wage for all such employees, are then deducted from earned

commissions during a subsequent pay period and are treated in all respects as a debt owed by such employees to Defendants, violates the rights of the Plaintiff as protected by the FLSA, 29 U.S.C. §206(a) and §§207(a) and (i).

## COUNT IV:
## FLSA VIOLATION – WORK OFF THE CLOCK

62. Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

63. Defendants' practices as described above required Plaintiff to work for substantial periods of time for which she received no compensation.

64. Defendants' practices have thus deprived Plaintiff of earned wages and compensation in violation of 29 U.S.C. §206(a) and §§207(a) and (i), causing damages to Plaintiff in an amount to be determined at trial.

## COUNT V:
## FLSA VIOLATION – FAILURE TO PAY OVERTIME

65. Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

66. Defendants failed to properly compensate Plaintiff at the rate of one and one-half times the lawfully required regular rates for all weeks in which overtime was actually worked. This constitutes a violation of 29 U.S.C. §207(a), causing damages to Plaintiff in an amount to be determined at trial.

## COUNT VI:
## WILLFUL VIOLATION OF
## THE FLSA

67. Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

68. Defendants knew that their compensation practices, as described in this Complaint, including failing to properly pay overtime, failing to properly pay commissions, "and failing to properly calculate and pay earned commissions, were willful violations of the FLSA or Defendants should have but failed to inquire further into whether said policies and practices were in violation of the FLSA and Defendants failed to make adequate further inquiry.

69. As a consequence, the actions and omissions of the Defendants in implementing these policies and practices were willful in nature, entitling Plaintiff to a three-year statute of limitations.

## COUNT VII:
## UNJUST ENRICHMENT

70. Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

71. Defendants' practices of not paying Plaintiff's commissions and failing to pay for hours worked were inequitable and constituted unjust enrichment under applicable state laws.

## COUNT VIII:
## PROMISSORY ESTOPPEL

72. Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

73. Defendants promised Plaintiff to pay for all commissions earned.

74. Plaintiff relied on the promise to her detriment as a result of the Defendants' failure to fulfill its promise.

## COUNT IX:
## BREACH OF CONTRACT

75. Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

76. Defendants had a contract with all its employees including Plaintiff to pay all commissions.

77. Defendants breached its contract with Plaintiff by not paying Plaintiff her earned commissions.

## COUNT X:
## RETALIATION PURSUANT TO FLSA AND DELAWARE WAGE AND PAYMENT ACT

78. Plaintiff reiterates and incorporates by reference all of the preceding paragraphs as if fully rewritten herein.

79. Plaintiff engaged in protected activity when she met with Defendant Gardner to complain about unpaid commissions.

80. Gardner terminated Plaintiff as a result of her complaining about unpaid commissions.

81. There is a causal link between Plaintiff's protected activity and her termination.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff, Julia Donahue, requests that this Court enter the following relief

1. Restitution for the portion of the minimum wage that Plaintiff has not received.

2. Compensation for the overtime work for which Plaintiff has not been compensated at a rate of one and one-half the lawfully required rate;

3. Compensation for wages and commissions earned but unpaid;

4. Liquidated damages pursuant to 29 U.S.C. § 216(b);

5. Attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

6. Any other relief in law or equity to which Plaintiff may be entitled.

**THE POLIQUIN FIRM**

<u>/s/ Ronald G. Poliquin</u>
Ronald G. Poliquin, Esquire
I.D. No. 4447
1475 S. Governors Ave.
Dover, DE 19904
(302) 702-5501
Attorney for Julia Donahue

Date:  December 27, 2022